UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TRUSTMARK NATIONAL BANK                                                                         PLAINTIFF

VS.                                                               CIVIL ACTION NO. 3:13CV00185 DPJ-FKB

FIRST NBC BANK                                                                                    DEFENDANT

ORDER

This contract dispute is before the Court on Defendant First NBC Bank's Motion to Dismiss for Improper Venue [5]. Plaintiff Trustmark National Bank responded [8] in opposition to Defendant's motion, to which Defendant replied [10]. Having considered the parties' memoranda and submissions, along with the pertinent authorities, the Court finds that Defendant's motion should be denied.

I.      Facts and Procedural History

This is an action for breach of two loan-purchase contracts. Plaintiff Trustmark National Bank ("Trustmark")—whose principal place of business is Jackson, Mississippi—purchased a series of loans from Defendant First NBC Bank ("First NBC")—whose principal place of business is New Orleans, Louisiana.

It appears that the parties executed the loans in their respective home offices in Jackson and New Orleans. But according to Trustmark, First NBC originated and sold the two disputed loans from its Gulfport, Mississippi, mortgage office. Resp. Opp'n Mot. Change Venue [8] Ex. A, Miller Aff. ¶ 4. Trustmark then sold the loans to Fannie Mae, id. ¶ 5, but the two Louisiana residences that secured the loans foreclosed. Id. ¶¶ 6, 11; Reply Mem. Supp. Def.'s Mot. to Dismiss [10] at 3.

Fannie Mae conducted a post-foreclosure review and demanded reimbursement from Trustmark because the loans did not comply with the Fannie Mae origination requirements. Resp. Opp'n Mot. Change Venue [8] Ex. A, Miller Aff. ¶ 11. This demand triggered a provision in the purchase contracts between Trustmark and First NBC by which First NBC agreed to indemnify and reimburse Trustmark if Fannie Mae subsequently declared the loans ineligible (as it did). *Id.* ¶ 7.

In this suit, Trustmark argues that First NBC never reimbursed Trustmark for the amount Trustmark paid Fannie Mae and therefore breached the purchase contracts. Pl.'s Amd. Compl. [4] ¶ 47. First NBC counters that Trustmark negligently serviced the loans and failed to mitigate its damages. Reply Mem. Supp. Def.'s Mot. to Dismiss [10] at 2. First NBC now seeks dismissal under Rule 12(b)(3), but alternatively asks the Court to transfer the matter to the Eastern District of Louisiana. The Court has subject-matter and personal jurisdiction and is prepared to rule.

II.     Standard of Review

On a Rule 12(b)(3) motion to dismiss, "the court views all the facts in the light most favorable to the plaintiff." *Ambraco Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009) (quotation omitted). It may consider "evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Id.* at 238 (quotation omitted).

III.    Analysis

A.      Proper Venue Under § 1391

First NBC suggests that Trustmark filed in the wrong venue, but the position receives only passing reference in First NBC's two memoranda. Venue is proper under 28 U.S.C.

§ 1391(b)(2) if the case is "brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated . . . ." At best, First NBC demonstrates that the Eastern District of Louisiana is also a proper venue, but it fails to show that this district is improper. *See* 28 U.S.C. § 1391(b)(2).

B.     Venue Transfer Under § 1404

The main thrust of First NBC's motion is its claim that the Eastern District of Louisiana is a more convenient forum necessitating transfer. Title 28 U.S.C. § 1404(a) allows a change of venue "[f]or the convenience of parties and witnesses, in the interest of justice." "He who seeks the transfer must show good cause." *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 315 (5th Cir. 2008) (citation omitted).

> To show good cause means that the moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer.

*Id*. (quoting 28 U.S.C. § 1404(a)). Ultimately, the movant must show that the desired venue is "clearly more convenient." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

The trial court may exercise its sound discretion when deciding whether to transfer venue. *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 631 (5th Cir. 2008). That decision "turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir.

2004) (footnote omitted). Thus, the factors are weighed, not counted. *In re Radmax*, 720 F.3d at 290 n.8.

        1.        Private-Interest Factors

The first group of factors accounts for the parties' interests. These are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Action Indus.*, 358 F.3d at 340 n.8 (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986)).

The first private-interest factor—relative ease of access to sources of proof—favors neither forum. While First NBC concedes that both parties already possess the contracts and the pertinent loan documents, it argues baldly that *its* remaining physical evidence and documents would be more accessible if the case were in the Eastern District of Louisiana. First NBC fails, however, to describe its other evidence or how voluminous it may be. And even assuming First NBC does have certain unidentified documents or other evidence in its possession in Louisiana, it is only natural to conclude that Trustmark would likewise possess additional evidence in Mississippi, especially in light of First NBC's argument that Trustmark acted negligenctly. First NBC has not shown that this factor is anything other than neutral.

Second, the availability of compulsory process for witnesses is likewise neutral. Neither party has identified any potential non-party witnesses. It would be impossible, then, to decide whether such witnesses reside within the Court's 100 mile subpoena power. *See* Fed. R. Civ. P. 45(b)(2)(B). Again, First NBC has not shown that this factor is anything other than neutral.

Third, the cost of attendance of willing witnesses weighs against transfer.  First NBC argues that the New Orleans courthouse is more convenient for *its* witnesses because they all live in Louisiana, but it fails to identify those witnesses or address Trustmark's potential witnesses.  While First NBC need not produce witness affidavits, *Volkswagen II*, 545 F.3d at 317 n.12, it must at least give the Court some relevant information.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) ("[D]efendants must provide enough information to enable the District Court to balance the parties' interests."); *cf. Volkswagen II*, 545 F.3d at 317 (finding this factor weighed in favor of transfer when defendant submitted a potential witness list and affidavits from two witnesses stating that travel would be inconvenient).  Yet First NBC offers no such information.  Trustmark, on the other hand, identified two key witnesses, Richard Miller and Linda Stephens, both of whom live and work in Jackson, Mississippi.  It also indicated—without contradiction—that its employees communicated "mostly only" with two First NBC employees who worked in First NBC's Mississippi mortgage office.  Because the only identified witnesses are located in this venue, this factor militates against transfer.

The fourth and final private-interest factor covers "all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Action Indus., Inc.*, 358 F.3d at 340 n.8 (citation omitted).  Trustmark points out that it has no offices or branches in Louisiana, whereas First NBC has a mortgage office in Mississippi.  But Trustmark fails to explain how this would impact the efficiency of a trial.  Next, it contends that, since its attorneys have no Louisiana license and First NBC's attorneys hold Mississippi licenses, transfer to Louisiana would result in an unnecessary practical hardship.  This argument fails because, under § 1404, courts consider the parties' and witnesses' convenience, not the lawyers' convenience.  *In re Volkswagen AG*

5

*("Volkswagen I")*, 371 F.3d 201, 206 (5th Cir. 2004).  Because the parties submitted no other evidence of practical problems, this factor helps neither party.  So the only private interest factor that is not neutral—the willing witnesses' costs of attendance—favors the Southern District of Mississippi.

        2.        Public-Interest Factors

The second set of factors accounts for the public's interest in the trial's location.  These are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law." *Volkswagen II*, 545 F.3d at 315 (citation omitted).

The first public-interest factor considers the administrative challenges caused by judicial congestion.  This factor is "most speculative," and raw statistics are not always reliable.  *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).  Nevertheless, this Court has compared the current venue's median disposition time with the proposed transferee venue's median time. *Skyhawke Techs., LLC v. DECA Int'l Corp.*, 3:10cv708–TSL–MTP, 2011 WL 1806511, at *7 (S.D. Miss. May 11, 2011).  Under this method, the Eastern District of Louisiana takes slightly longer to dispose cases.[1]  Consequently, this factor would disfavor transfer but only by the slightest margin.

   Courts must next consider whether the case is of local interest, since "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the

---

[1] *See Table C-5 U.S. District Courts—Median Time Intervals from Filing to Disposition of Civil Cases Terminated*, UNITED STATES COURTS 2, www.uscourts.gov/uscourts/Statistics/ JudicialBusiness/2012/appendices/C05Sep12.pdf.

litigation." *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1380 (5th Cir. 1988).  This factor favors transfer but requires a little more attention.

Both venues boast connections to the litigation as they are home to the two parties.  Also, accepting the arguments of First NBC's counsel as true, the contracts were negotiated and executed in Louisiana and were secured by property in Louisiana, where the work to be performed in the subject contracts occurred.  Def.'s Reply [10] at 8.  But Trustmark counters that it was injured in the Southern District of Mississippi.  It also provides the affidavit of its Senior Vice President Richard Miller, who oversaw the contract negotiations and Trustmark's performance.  According to him:  (1) the loans actually originated—the disputed conduct—from First NBC's Mississippi mortgage office; (2) Trustmark purchased the loans using funds disbursed from Mississippi; (3) First NBC's Mississippi mortgage office was the primary foundation and source of Trustmark's relationship with First NBC; (4) Trustmark serviced the loans from Mississippi; (5) Trustmark's side of the contract negotiations were performed in Mississippi where it signed all documents; (6) Trustmark collected certain fees on the loans in Mississippi; (7) Trustmark's dealings with Fannie Mae and First NBC regarding Fannie Mae's demands occurred in Mississippi; and (8) Trustmark communicated with First NBC most frequently through First NBC's employees in its Mississippi mortgage office.  Miller Aff. [8-1] ¶¶4–18.

First NBC never adequately disputes Miller's claim that the loans originated in First NBC's Mississippi mortgage office.  This is a significant point given that alleged departures from Fannie Mae's origination requirements led to its demand on Trustmark and Trustmark's demand on First NBC.  Resp. Opp'n Mot. Change Venue [8] Ex. A, Miller Aff. ¶¶ 5, 7.  At most, First

7

NBC argues that the two parties negotiated and executed the loans from their homes—which would be neutral. And in terms of establishing a local interest in Louisiana, First NBC has not explained why the contacts it cites—such as the location of the secured property—are overly relevant to the actual dispute. Finally, the record establishes that after the deal was struck, Trustmark serviced the loans from Jackson, Mississippi. *Id.* ¶ 5. This fact gains significance given First NBC's avoidance arguments that "Trustmark failed to mitigate its damages and was otherwise negligent in servicing" these loans. Def.'s Mem. [7] at 1. That alleged conduct would have occurred in this venue and further tips the scales with respect to this public-interest factor.

The third factor—forum's familiarity with the applicable law—disfavors transfer. Trustmark's assertion that Mississippi law will apply, either based on the choice of law provision or otherwise, goes uncontested by First NBC. And a Mississippi federal court has more experience applying Mississippi law than a Louisiana federal court does. *Cf. Dale v. First Am. Nat'l Bank*, 395 F. Supp. 2d 451, 456 (S.D. Miss. 2005) (finding this factor favored transfer to a federal court in Tennessee when Tennessee law applied). While the factor may not be significant, it does not support transfer.

The final public-interest factor is the avoidance of difficulties with conflicts of laws or with applying foreign law. The contracts contain choice-of-law provisions, and neither party has argued that a conflict in laws will arise. As such, the final factor is neutral.

First NBC has failed to show that any of the private-or public-interest factors favor transfer. Half of the factors are neutral, and the rest disfavor transfer, at least to some extent. And while some may offer only slight weight, there is nothing to balance against them. First

NBC therefore fails to show good cause to transfer this matter to the Eastern District of Louisiana.

IV.     Conclusion

Venue is proper in the Southern District of Mississippi, and First NBC has failed to clearly demonstrate that the Eastern District of Louisiana would be a more convenient place for trial.  For these reasons,  First NBC's Rule 12(b)(3) Motion to Dismiss is denied.  This Court has considered all of the parties' arguments.  Those not addressed would not change the result.

**SO ORDERED AND ADJUDGED** this the 18th day of September, 2013.

                                        s/ *Daniel P. Jordan III*
                                        UNITED STATES DISTRICT JUDGE